ADAM K. BULT, ESQ., Nevada Bar No. 9332
abult@bhfs.com
EMILY A. ELLIS, ESQ., Nevada Bar No. 11956
eellis@bhfs.com
BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV  89106-4614
Telephone:  702.382.2101
Facsimile:   702.382.8135

*Attorneys for Plaintiff 702 Helicopter*

# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| 702 HELICOPTER, a Nevada corporation, <br><br>  Plaintiff, <br><br> v. <br><br> ASHLEY POLSTON, an Individual; THEODORE R. WRIGHT ENTERPRISES, INC., a Montana Corporation. <br><br>  Defendants. | CASE NO.: <br><br> **COMPLAINT** <br><br> **(JURY DEMAND)** |

Plaintiff 702 Helicopter ("Plaintiff" or "702 Helicopter"), by and through its counsel of record Adam K. Bult, Esq., and Emily A. Ellis, Esq., of the law firm of Brownstein Hyatt Farber Schreck, LLP, hereby files this Complaint against Defendant Ashley Polston ("Polston") and Defendant Theodore R. Wright Enterprises, Inc., and respectfully alleges as follows:

**PARTIES**

1. Plaintiff 702 Helicopter is, and was at all times relevant hereto, a Nevada corporation with its principal place of business in Las Vegas, Nevada.

2. 702 Helicopter is informed and believes and thereon alleges that at all times relevant hereto, Defendant Polston was an individual and resident of Missouri.

3. 702 Helicopter is informed and believes and thereon alleges that at all times relevant hereto, Defendant Theodore R. Wright Enterprises, Inc. ("Wright Enterprises") was a

Montana Corporation, doing business in Las Vegas, Nevada.

**JURISDICTION AND VENUE**

4. Plaintiff repeats and realleges the allegations set forth in Paragraphs 1 through 3 as though fully set forth herein.

5. This case arises under the Federal Declaratory Judgments Act, 28 U.S.C. §§ 2201 and 2202 and 49 U.S.C. § 4401, *et seq.*

6. This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. §§ 1331, 1332, and 49 U.S.C. § 4401, *et seq.*

7. The Court has personal jurisdiction over the Defendants because (a) Polston intentionally directed activities to Nevada by purporting to enter into a security agreement with a Nevada entity, (b) Polston's recordation of the security agreement is causing harm to a Nevada entity, (c) Wright Enterprises intentionally directed activities to Nevada by negotiating and intending to enter into a lease agreement with a Nevada entity and ultimately transferring title to a helicopter to a Nevada entity, (d) the claims herein arise out of these actions, and (e) the exercise of personal jurisdiction over the Defendants would not be unreasonable.

8. Venue is proper in the United States District Court for the District of Nevada's unofficial Southern District under 28 U.S.C. § 1391(b)(2).

**GENERAL ALLEGATIONS**

9. Plaintiff repeats and realleges the allegations set forth in Paragraphs 1 through 8 as though fully set forth herein.

10. 702 Helicopter is one of the leading providers in Las Vegas specializing in scenic helicopter tours, adventure helicopter tours and flight instruction.

11. In or around April of 2017, Polston's husband, T.R. Wright ("Wright"), approached 702 Helicopter regarding purchasing two helicopters from Wright.

12. As the asking prices were not feasible, 702 Helicopter declined the offer.

13. Not satisfied, and eager to get rid of the helicopters, Wright, through his entity Wright Enterprises, instead offered to lease the helicopters to 702 Helicopter, with monthly payments and an option to purchase at the end of the term.

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

14. To facilitate this arrangement, a lease agreement was drafted and negotiated, but never fully executed ("Lease Agreement").

15. The reason the Lease Agreement was never fully executed and operative is because once 702 Helicopter was able to inspect the helicopters, it discovered that the helicopters were not airworthy and would need substantial work to become airworthy and pass all inspections.

16. In light of this, the deal set forth in the Lease Agreement was abandoned, and Wright proposed a new offer wherein he would transfer title to the helicopters to 702 Helicopter as an "investment in the company". The new offer also involved 702 Helicopter and Wright splitting the cost to repair the helicopters, 702 Helicopter providing Polston with money in the event the helicopters generated income, and splitting the proceeds from any sale of helicopters.

17. 702 Helicopters accepted this offer and both helicopters were transferred to 702 Helicopter. As is relevant here, on June 14, 2017, Wright, as President of Wright Enterprises, executed a Bill of Sale for the second helicopter, an AS350BA Eurocopter France ("AS350 Eurocopter"), transferring title in the helicopter to 702 Helicopter Inc. Because this was an investment in 702 Helicopter, the Bill of Sale was silent as to any amount paid or to be paid for the AS530 Eurocopter.

18. On the same day, 702 Helicopter's President filed with the FAA an Aircraft Registration Application, wherein he registered the AS360 Eurocopter to 702 Helicopter.

19. As evidence of the fact that the parties were not operating under the terms of the original deal, the Lease Agreement expressly provided that legal title to the helicopters "shall remain in the Lessor at all times" – pursuant to the new deal, Wright transferred title to both helicopters, including the AS350 Eurocopter, to 702 Helicopter.

20. During this time, Wright was being investigated by the Federal Government and was eventually convicted and sentenced to prison.

21. In order to pay for his attorneys' fees, Wright reached out to 702 Helicopter to inquire as to whether it would agree to sell the first helicopter.

22. As 702 Helicopter had yet to invest any money into the repair and maintenance of

17582003                                                 3

the helicopter, 702 Helicopter agreed to the same and the helicopter was sold, with Wright collecting all of the proceeds.

23. Consistent with the parties' agreement, 702 Helicopter proceeded to invest a substantial amount of time, energy and resources into the second helicopter, the AS350 Eurocopter, to make it airworthy.

24. In total, 702 Helicopter invested approximately $150,000 into the AS350 Eurocopter. Wright did not, however, split the cost of repairing the AS350 Eurocopter.

25. During this time, 702 Helicopter and its owners were helping out Polston financially due to the fact that her husband was in prison and unable to provide for her. 702 Helicopter provided Polston with approximately $40,000.

26. As 702 Helicopter holds title to and is the registered owner of the AS350 Eurocopter, and Polston was searching for ways in which to ensure she would continue to have income, Polston finagled a way to get 702 Helicopter to execute a security agreement relating to the AS350 Eurocopter.

27. That is, as Polston had become very close friends with the owners of 702 Helicopters and knew that they trusted her, she sent an email to the owners under the guise of needing signatures to finalize the title transfer of the AS350 Eurocopter. Unbeknownst to 702 Helicopter's owners, the document Polston presented to them for signature was, in fact, a security agreement providing Polston with a security interest in the AS350 Eurocopter.

28. The reason Polston hid the true identity of the security agreement is because she knew 702 Helicopter's owners would never sign an agreement giving her a security interest in the helicopter because she did **not** have one: (i) she was not a party to *any* of the agreements between 702 Helicopters and Wright and/or Wright Enterprises, (ii) there is no lease agreement, note or other instrument in place obligating 702 Helicopter to make payments to her (or any other party), and (iii) 702 Helicopter is the registered owner of the AS350 Eurocopter and owns the helicopter outright.

29. Trusting that Polston was being truthful about the nature of the document needing signature, on November 8, 2017, 702 Helicopter blindly authorized an e-signature to be used on

an Aircraft Security Agreement ("Security Agreement") purporting to provide Polston with a security interest in the Eurocopter AS350.

30. The Security Agreement is not, however, a binding and enforceable agreement. That is, the Security Agreement does not contain the material terms – there is *zero* information regarding the purported debt (because there is no debt), it does not include the amount of any purported note, and it is silent with regard to any information relating to payments alleged to be made.

31. Despite the fact that Polston does not have any interest in the AS350 Eurocopter, as the Lease Agreement is not an operative agreement and the Security Agreement is not a valid agreement, Polston has threatened 702 Helicopters that she will enforce the Security Agreement and seize the AS350 Eurocopter. Specifically, she has taken the position that the parties are bound to the terms of the Lease Agreement and demanded that 702 Helicopter pay her $650,000 for the helicopter, or she will foreclose on her purported security interest in the helicopter.

32. Upon conducting an FAA title search for the AS350 Eurocopter, 702 Helicopter discovered that the Security Agreement was in fact filed and that 702 Helicopter's title is improperly encumbered by the Security Agreement. Not only did Polston lure 702 Helicopter into signing the Security Agreement by misrepresenting the nature of the document, but Polston recorded this Security Agreement containing a false representation with the intention to cause harm to 702 Helicopter's title.

33. As 702 Helicopter has invested substantial time, energy and resources into the AS350 Eurocopter and is the rightful owner of the same, the fact that the Security Agreement is wrongfully encumbering the title, along with Polston's threats of seizing the helicopter, are causing harm to 702 Helicopter, necessitating this Court's intervention and determination that (i) the Lease Agreement is not an operative agreement, (ii) that the Security Agreement is unenforceable, and (iii) that neither Polston nor Wright Enterprises have a security interest in the AS350 Eurocopter.

. . .

. . .

## FIRST CAUSE OF ACTION

**(Breach of Contract – Anticipatory Breach – against Wright Enterprises)**

34. Plaintiff repeats and realleges the allegations set forth in Paragraphs 1 through 33 as though fully set forth herein.

35. There is a valid and existing contract between 702 Helicopter and Wright Enterprises for Wright Enterprises to transfer title to the AS530 Eurocopter to 702 Helicopter.

36. Without justification, Wright Enterprises, through Polston, has expressly indicated its intention to breach the agreement by taking action to seize the AS530 Eurocopter.

37. Such a breach of the agreement would cause damages to 702 Helicopter and excuses 702 Helicopter from performance of any of its obligations under the agreement.

38. Plaintiff has been forced to retain counsel to prosecute this action and is, therefore, entitled to an award of attorneys' fees and costs as provided by law.

## SECOND CAUSE OF ACTION

**(Breach of the Covenant of Good Faith and Fair Dealing against Wright Enterprises)**

39. Plaintiff repeats and realleges the allegations set forth in Paragraphs 1 through 38 as though fully set forth herein.

40. Every contract imposes upon the contracting parties a duty of good faith and fair dealing.

41. Given that every contract carries an implied covenant of good faith and fair dealing, Wright Enterprises had a duty to adhere to the agreements and conduct business in good faith.

42. 702 Helicopters satisfied the obligations of acting in good faith and fair dealing with Wright Enterprises.

43. Wright Enterprises breached its duty of good faith and fair dealing by threatening, through Polston, to seize the AS530 Eurocopter and claiming that the Lease Agreement controlled the parties' respective obligations.

44. Wright Enterprises also breached its duty of good faith and fair dealing by, through Polston, obtaining 702 Helicopter's e-signature on the Security Agreement by

misrepresenting the nature of the document, recording the Security Agreement with the FAA, and encumbering the title to the AS350 Eurocopter. This conduct cuts against the spirit of the agreement for Wright Enterprises to transfer clean title in the helicopter to 702 Helicopter.

45. As a direct and proximate result of Wright Enterprises' acts and omissions, Plaintiff will suffer direct, incidental, and consequential damages in an amount to be proven at trial.

46. Plaintiff has been forced to retain counsel to prosecute this action and is, therefore, entitled to an award of attorneys' fees and costs as provided by law.

## THIRD CAUSE OF ACTION

**(Declaratory Relief against All Defendants)**

47. Plaintiff repeats and realleges the allegations set forth in Paragraphs 1 through 46 as though fully set forth herein.

48. A ripe case in controversy now exists between Plaintiff and Defendant Polston concerning the validity and enforceability of the Lease Agreement and the Security Agreement. This controversy is capable of and in need of prompt judicial resolution.

49. Plaintiff has satisfied all conditions precedent to filing this suit, and if not, those conditions have been waived or are futile.

50. Plaintiff is entitled to a declaration that the Security Agreement is unenforceable because it lacks material terms and that the Lease Agreement is not an operative agreement. Plaintiff is also entitled to a declaration that neither Polston nor Wright Enterprises have a security interest in the AS350 Eurocopter.

51. Plaintiff has been forced to retain counsel to prosecute this action and is, therefore, entitled to an award of attorneys' fees and costs as provided by law.

## FOURTH CAUSE OF ACTION

**(Slander of Title against All Defendants)**

52. Plaintiff repeats and realleges the allegations set forth in Paragraphs 1 through 51 as though fully set forth herein.

53. 702 Helicopter, as the owner of the AS350 Eurocopter, has exclusive valid title to

the property.

54. Polston and Wright Enterprises disparaged 702 Helicopter's title to the property by and through the recordation, publication and maintenance of an invalid Security Agreement.

55. Polston and Wright Enterprises knew or should have known that the recordation of the Security Agreement was improper because there is no underlying debt.

56. As a direct and proximate result of Defendants' actions in recording, publishing, and maintaining the Security Agreement, 702 Helicopter's title to the property has been disparaged and clouded, thereby causing damages.

57. Plaintiff has been forced to retain counsel to prosecute this action and is, therefore, entitled to an award of attorneys' fees and costs as provided by law.

WHEREFORE, Plaintiff prays for relief as follows:

1. For declaratory relief in the form of a Decree from this Court that the Security Agreement is unenforceable because it lacks material terms, that the Lease Agreement is not a valid contract, and that neither Polston nor Wright Enterprises have a security interest in the AS350 Eurocopter;

2. For compensatory, general, and special damages in an amount to be determined at trial;

3. For an award of reasonable attorneys' fees and costs; and

4. For such other and further relief as this Court may deem just and proper.

DATED this 25th day of October, 2018.

BROWNSTEIN HYATT FARBER SCHRECK, LLP

BY:  */s/ Emily A. Ellis*
ADAM K. BULT, ESQ., Nevada Bar No. 9332
abult@bhfs.com
EMILY A. ELLIS, ESQ., Nevada Bar No. 11956
eellis@bhfs.com
100 North City Parkway, Suite 1600
Las Vegas, NV  89106-4614
Telephone:  702.382.2101
Facsimile:   702.382.8135

*Attorneys for Plaintiff 702 Helicopter*